UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Eagle Nation Cycles,<br>Steven V. Erato,<br>Michael L. Funk,<br>Wendy Williamson,<br>Lottie A. Tucker,<br>          Plaintiffs,<br><br>Vs.<br><br>City of Neenah,<br>Neenah Police Department,<br>Hon. Scott C. Woldt in<br>Official & Individual Capacity,<br>Chief Kevin E. Wilkinson in<br>Official & Individual Capacity,<br>Captain Thomas Long in Official<br>& Individual Capacity,<br>Winnebago County,<br>          Defendants. | JURY TRIAL DEMANDED<br>Case No. |

**PLAINTIFF'S COMPLAINT SEEKING DAMAGES AND DECLARATORY RELIEF**

**NOW COMES** the Plaintiffs, Eagle Nation Cycles, Steven V. Erato, Michael L. Funk, Wendy Williamson, and Lottie A. Tucker for their Complaint against the Defendants, City of Neenah, Municipality, Neenah Police Department, Municipal Police Department, Winnebago

County Judge Scott C. Woldt, and Winnebago County, Chief Kevin E. Wilkinson of the Neenah Police Department, and Captain Thomas Long of the Neenah Police Department:

## I. INTRODUCTION

1. Pursuant to Federal Law 42 U.S.C. 1983, the Plaintiffs were denied privileges given by the US Constitution or by federal or state law, 4th Amendment of the U.S. Constitution, guarantees against unreasonable searches and seizures, 14th Amendment of the U.S Constitution, guarantee due process by States, 28 U.S.C. 455, Failure of a judge to disqualify themselves when impartiality may come into question, Wisconsin State Constitution, Article I Section 11, guarantees against unreasonable searches and seizures, Wisconsin Statute Chapter 893, Subchapter VII 893.70, Action against certain officials by the omission of an official duty. Supreme Court Rules, Chapter 60.03, A judge shall avoid impropriety in all of the judge's activities. Wisconsin Statute 802.025(1)(b), Damages in certain personal injury actions including loss of consortium, society or companionship.

## II. JURISDICTION

2. This action is brought to secure the protection and redress the rights secured to the Plaintiffs by the Federal Law 42 USC Sec. 1983, the Fourth and Fourteenth Amendments to the United States Constitution.

3. Wisconsin Administrative Code, Subchapter VII, 893.70.

4. Jurisdiction is invoked pursuant to 28 U.S.C. Sections 1331, 1343, and 2202, the aforementioned statutory and constitutional provisions.

5. The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1331 to hear and decide claims arising under state law do to the constitutionality of the law.

6. Wisconsin Administrative Code, Subchapter VII, 893.70 Prohibition against exclusion from participation in and a departure from standard procedure. The defendants' omission of an official duty including crafting, signing, and executing an overly broad and invalid warrant.

7. No sovereign immunity in Wisconsin for State Officer's performance of ministerial duties (Law allowing no personal discretion, only the strict following of law) and actions that are malicious, willful and intentional.

8. Qualified immunity is an affirmative defense. Early cases required a public employee to establish both that he/she did not violate clearly established law and that he/she acted without malicious intent.

9. There are exceptions to the sovereign immunity of a state; the Eleventh Amendment does not stop a federal court from issuing an injunction against a state official who is violating federal law.

10. The Supreme Court has held that only injunctive relief can be awarded against a state officer used in his official capacity, retroactive monetary relief can be granted against an officer sued in his individual capacity. Bringing an action against an officer in his individual capacity does not implicate state sovereignty.

11. The theory behind *respondeat superior* is that the principal controls the employee's behavior and must then assume some responsibility for the employee's actions.

## III. STATEMENT OF FACTS

12. In December, 2005 the Crime Victim's Rights Board ruled in favor of Steven V. Erato in a matter against Judge Scott C. Woldt and then District Attorney William Lennon.

    a) The matter arose during the trial of Merica Kabke regarding the accidental death of Vincent Erato, Steve and Merica's son. Kabke had used marijuana prior to the auto accident.

    b) At the end of the proceedings it is mandated that if the victim of a crime wants to make a statement they are allowed to do so per Wisconsin law. If they are denied this right they may file a report with the Crime Victim's Rights Board.

    c) As the victim of the crime (Vincent's father), Erato had planned on making an impassioned plea on behalf of Kabke and the fact that she had made a mistake while driving. Part of his statement was to include the fact that both Woldt and Lennon had checkered histories. His statement regarding Woldt was to highlight the fact that Woldt had killed a passenger on a motorcycle while drunk at the age of 18. His statement regarding Lennon was to point out that Lennon also had a history of drug abuse, as he had previously admitted to using cocaine.

    d) Erato's desire to make statement was not to shame or harm the judge or the District Attorney, but rather, to illustrate that we all make mistakes—even judges and prosecutors—and that punishing Kabke harshly would be hypocritical for both of these men.

e) Woldt and Lennon both denied Erato the right to speak at the sentencing hearing as they were legally obligated to do.

f) Erato filed a complaint with the Crime Victim's Rights Board against Woldt and Lennon, as well as the current District Attorney, Christian Gossett, stating that they denied him his rights. CVRB ruled in favor of Erato and penalized Woldt and Lennon for their willful neglect of Erato's rights.

13. At all periods prior to the raid in question, the plaintiffs had always cooperated with police during any investigations. Erato has always allowed, and indeed, encouraged the presence of law enforcement in his shop, area of business and anywhere about his property (Eagle Nation). This is exemplified by the prior cooperation with former Neenah Police Detective Lt. Robert Wallner, Former Neenah Police Detective Daniel Dringoli, Current Police Captain Thomas Long, current Neenah Police Lt. John Karner, current Neenah Police officer Dennis Gitter, who have all visited the property (collectively) in total in excess of 100 times in the past 15 years in their official capacity as law enforcement officers.

14. Members of the LWAMEG (made up of four different county Sheriffs' Deputies, and various other members of municipal law enforcement departments from the counties of Winnebago, Outagamie, Fond du Lac, and Calumet Wisconsin) observed an alleged drug exchange take place in the alleyway located behind Eagle Nation Cycles, 206 Main St., Neenah, WI 54956, Cranked Bike Studio 200 Main Street Neenah, Therapy, 208 Main Street, and Gords Pub 210 Main Street on Thursday, September 20, 2012. After pulling the car over that was involved in the exchange, MEG determined that a small heroin sale took place.

15. The alleyway located behind Eagle Nation and where the police claim to have witnessed a drug transaction that gave purported probable cause for a SWAT raid, is also behind two (2) bars, Gords Pub 210 Main Street, Therapy 208 Main Street.

16. Officers claimed that the target went into Eagle Nation.

17. Inspection of the location reveals that from where affiant was standing, it is a physical impossibility to see the rear entrance of Eagle Nation. This would be known to anyone even remotely familiar with this area of Neenah, Wisconsin.

18. Therapy is locally known as the "Crack Shack" due to the open and notorious drug use and sales that take place in that establishment.

19. On, September 20, 2012, LWAMEG requested a search warrant for "Eagle Nation Choppers" and presented that warrant to Judge Scott C. Woldt.

20. The second commanding officer is the LWAMEG is Randy Woldt, Winnebago County Sheriff's Deputy, brother of Judge Scott Woldt.

21. The warrant laid out claims against "Eagle Nation," claiming the facility was being used in a complex drug manufacturing and distribution operation in conjunction with the Hells Lovers motorcycle gang and suggested activities and persons in the facility as if it were an episode of the television series, Sons of Anarchy.

22. Given the longstanding history of police presence and interaction with Eagle Nation, the officer's submitting the warrant request knew that it was rife with inaccuracies, misstatements, and unsubstantiated supposition.

23. Judge Scott C. Woldt reviewed the warrant and, without hesitation, signed the warrant on the same day, September 20, 2012, at 8:12 PM.

24. Eagle Nation Cycles is a multi-business, mixed-use building comprising approximately 12,000 square feet. At the time of the raid, conducted by the LWAMEG unit and the Neenah Police Department SWAT Team, the building housed four (4) separate business operations: Eagle Nation Cycles, Eternal Flame Tattoo Parlor, Sanity, and Stonewood Condominiums. All of these businesses are separate businesses.

25. Cranked Bicycle Shop, another separate business, rents separate and self-contained storage space located within Eagle Nation's business complex. Cranked has their own keys and exclusive control of the storage area.

26. Located on the front of the building are separate phone numbers and signage for each shop, and, each individual business and renter received its own separate mail.

27. On Friday, September 21, 2012 shortly after 1:00 PM members of the Neenah Police Department, the Neenah SWAT Team and the LWAMEG Unit executed the warrant for "Eagle Nation Choppers" on all of the facilities located at the 206 Main St. business complex. Supervising the raid was Neenah Police Chief Kevin E. Wilkinson.

28. The hyper-militarized force parked an armored tank-like vehicle outside of Eagle Nation, stormed the building, bombarding the occupants with assault weapons drawn, screaming profanities and abuse, all while wearing plain clothes (ununiformed) and facemasks. None of the initial officers that entered the building were wearing marked police uniforms.

29. Several of the Officers involved in the raid, including Captain Long would have known that such force was wholly unnecessary, given their close personal and long-standing working relationship with Erato and Eagle Nation Cycles.

30. All of the plaintiffs were in the facility at that time, in different businesses or residences.

31. The police forcibly held occupants of the building at gunpoint, shouting profanities and exercising extreme and physical force.

32. Plaintiffs Erato and Funk are disabled military veterans.

33. Erato is a combat veteran, suffering from PTSD related to his service to this nation and exacerbated by the Defendant's actions.

34. Eagle Nation Cycles is a recognized, certified Disabled Veteran's Business (See Attached).

35. The police forces searched every business and residence within the building.

36. The officers claimed to have found a small amount of marijuana in one of the offices of Eagle Nation Cycles. However, suspiciously, the video recording in that office cuts out following the police entry into the room and then resumes only after the alleged discovery.

37. The video equipment was seized by SWAT Officers, and was not returned for several months.

38. Woldt signed a second warrant related to the equipment and Eagle Nation following the raid.

39. Other drugs were found in one of the residences of Stonewood Condominiums. The charges initially brought by the District Attorney's Office were dropped against the individual renters when the presiding court officer acknowledged the facial invalidity of the warrant.

40. Following the search, several senior police officers stood and openly discussed what charges to manufacture against Erato. When ordered to arrest Erato, the arresting officer, Renee Porter, asked on what charges, and openly questioned if the charges proffered were even appropriate.

41. The arresting officer has stated that she did not believe that probable cause existed for an arrest.

42. Following her voicing concerns about the raid and arrest, the officer was fired from the police department.

43. Despite the claims made in the warrant, no evidence of a drug manufacturing or distribution operation was discovered in the property.

44. The following day, Saturday, September 22, 2012 the Neenah Fire Marshall, Neenah building inspector, Neenah water inspector, and Neenah Police Chief Kevin Wilkinson arrived at the 206 Main St. business complex under the guise of conducting an inspection.

45. A fire inspection of the entire Eagle Nation building, including the condos was conducted just one day prior to the raid.

46. At the fire inspection one day before the raid, the city found only that a single fire extinguisher was out of date.

47. That extinguisher was promptly replaced.

48. Despite years of clean building and fire inspections this inspection, less than 24 hours after a fruitless raid, resulted in multiple fines and forfeitures for Stonewood Condominiums.

49. Following the inspection, the City of Neenah sent notice that Erato could no longer lease units in the building, despite zoning allowing for residential use, years of use as a residential housing, the city collecting taxes on the residential property and numerous inspections of the facility and the condominiums.

50. As a result of the raid, Erato was charged with 14 felony counts. Thirteen of the charges were erroneous felon in possession of a firearm charge, because Erato did not have possession of any firearms.

51. Erato was detained for eight days and was denied access to needed prescribed medication.

52. Following the raid, Erato suffered from extreme exacerbation of his diagnosed PTSD, depression and anxiety. He has suffered loss of income and his reputation in the community has been irreparably damaged.

53. Erato's wife, Merica C. Erato has since filed for divorce, citing the psychological and emotional trauma Steve Erato suffered as having so damaged and changed him to such an extensive degree as to render their marriage irredeemably damaged.

54. Following the raid, Wendy Williamson suffered from severe mental traumatization. Ms. Williamson has required significant mental health treatment, she is no longer being able to sleep requires medications and has suffered a deleterious loss of quality of life.

55. Following the raid, Michael L. Funk had significant trouble sleeping; has required mental health care; he has suffered from debilitating paranoia and fear of persecution, he is no longer comfortable going out in public as feels embarrassed and ostracized from the community.

56. The warrant never stated probable cause for nor requested ability to conduct a search of any other business except Eagle Nation Cycles.

57. All of the shops and businesses located at the 206 Main St business facility have suffered an incredible loss of business and income since the raid took place.

58. FIRST CAUSE OF ACTION: Violation of Federal Law 42 U.S.C. 1983

59. This law applies to situations where a person, who has been given authority by the law, deprives another person in the United States of rights or privileges that the second person has been given by the US Constitution or by federal or state law. The person who believes that he/she has been harmed in this way may sue in court.

60. The Defendants deprived Plaintiffs rights and privileges provide by US Constitution, Federal and State Laws by executing a search warrant that was overly broad and signed by a judicial official that could not act as a detached and impartial magistrate.

61. SECOND CAUSE OF ACTION: Violation of the 4th Amendment of the

62. U.S. Constitution.

63. A fundamental, constitutional guarantee that protects citizens from unreasonable search and seizure by the government.

64. The 4th Amendment ensures that warrants particularly describe the place to be searched.

65. A search is warrantless if the warrant lacks the particularity stated by the 4th amendment, even if the search was reasonable and achieves the goal of the search and the warrant. The U.S. Supreme Court has ruled that the particularity requirement cannot be defeated by a successful search, and that it is incumbent upon the officer executing a search warrant to ensure that the search is lawfully conducted. U.S. Supreme Court, *Groh v. Ramirez*, 540 U.S. 551 (2004).

66. THIRD CAUSE OF ACTION Violation of the 14th Amendment to the Constitution.

67. A fundamental, constitutional guarantee that the provisions of the Constitution of the United States will be enforced within the states.

68. The 14th Amendment limits the powers of the states.

69. The security of one's privacy against arbitrary intrusion by the police is implicit in the concept of ordered liberty and as such enforceable against the States through the Due Process Clause. U.S. Supreme Court *Elkins v. U.S.*, 364 U.S. 206 (1960).

70. FOURTH CAUSE OF ACTION: Violation of 28 U.S.C. 455 wherein any judge, justice, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality may come into question.

71. Would the average judge in the judge's position likely be neutral in a situation involving a warrant request against a person that had a previous dispute with him? Further, there are circumstances that in which the probability of actual bias on the part of a judge is too high to be constitutionally tolerable. U.S. Supreme Court *Caperton V. A. T. Massey Coal Co., Inc.*, 556 U.S. 868 (2009).

72. FIFTH CAUSE OF ACTION: Wisconsin Statute 893.70 Action against a Sheriff for a liability incurred by the doing of an act in his or her official capacity.

73. A sheriff's unit executing a facially invalid and unlawful warrant that caused harm to individuals is liable for damages resulting in the execution of that bad warrant.

74. SIXTH CAUSE OF ACTION: Violation of Wisconsin Supreme Court Rule 60.03 stating that a judge shall avoid impropriety and the appearance of impropriety in all of the judge's activities.

75. Public confidence in judges is eroded by irresponsible or improper conduct of judges.

76. SEVENTH CAUSE OF ACTION: Personal injury claims of, mental or emotional injury, loss of consortium, society, and companionship.

77. At common law a spouse can recover for a loss of consortium and companionship where the government was responsible for injuries to one of the parties. *Schwartz v. City Of Milwaukee*, 54 Wis.2d 286 (1972).

## IV. SUMMARY

78. 42 U.S.C. § 1983, commonly referred to as "section 1983" provides:

79. Every person who under color of any statute, ordinance, regulation, custom, or

usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, Suit in equity, or other proper proceeding for redress.

80. With respect to the extent of damages available, the Supreme Court has noted that the basic purpose of a section 1983 damages award is to compensate the victims of official misconduct, and therefore held that there is no limit on actual damages if they can be proven.

81. When government officials, "act is so obviously wrong, in the light of preexisting Constitution, Federal and State Laws, Section 1983 merely provides a method for the vindication of rights elsewhere conferred in the United States Constitution and Laws. Therefore, a plaintiff may prevail only when he was deprived of rights secured by the United States Constitution or Federal statutes. The most utilized of all constitutional provisions – the Fourteenth Amendment Due Process Clause.

82. The Defendants, in executing a faulty warrant denied the Plaintiffs their rights under the constitution and laws of both the United States and the State of Wisconsin.

83. The Constitution limits the abilities of the police to search and seize property without first having a warrant—with the particularities of the persons and areas to be searched laid out within the warrant—signed and executed by a judge. The judge signing the warrant must be a detached judge, one without bias and one who can be reasonably perceived to be impartial. Judge Woldt, because of the circumstances surrounding the Crime Victim's Rights Board ruling, cannot be seen as an impartial judge in matters regarding Steve Erato. Further, the warrant was either

a) Faulty on its face because it regarded the 206 Main St. business complex to be a single entity (Eagle Nation Cycles), which it is not, or;

b) Improperly executed because the combined law enforcement unit raided all of the businesses, residences, and facilities located at the complex as opposed to the singular business on the warrant.

84. Defendants' actions were unacceptable for multiple reasons:

a) On the front of the building, in big bright painted script multiple phone numbers and business names are listed. Video evidence shows the combined force entering the front of the building, going straight past the windows indicating separate businesses.

b) The Neenah Police had been invited to the building on multiple occasions by Erato and Funk, and having been regularly in the building knew that this was a multi-business unit, and knew this when executing the warrant. Captain Long knew this.

c) Erato and Eagle Nation have been referenced on a number of occasions in the paper, so Judge Woldt would have been able to associate Eagle Nation Cycles with Steve Erato. When he was approached to sign the warrant he should have advised that a different judge sign the warrant as there would be an appearance of bias.

85. Defendants' actions resulted in personal injury to the Plaintiffs in the form of mental injury, loss of consortium and companionship, and damage to societal relations.

86. Michael Funk and Wendy Williamson both have not been able to adequately sleep since the raid and both have needed to seek psychiatric help since then. Williamson also has issues of paranoia now.

87. The raid caused Erato to suffer from PTSD, leading to his wife filing for a divorce, citing that he has changed since then.

88. All associated with the raid feel a societal strain and fear going out in public since the very public daytime raid. Funk fears going into public and attending public events, his social life in Neenah has been destroyed by the raid. Defendants clearly thought they were going after a "Sons of Anarchy" type motorcycle gang, and so the raid was conducted with full tactical gear on, the sight of which has resulted in the Plaintiffs feeling that they are now ostracized from the community as criminals.

89. Defendant's actions resulted in a loss of business for Eagle Nation Cycles. Those that would have brought their motorcycles to Eagle Nation Cycles no longer do so, resulting in financial damage to Eagle Nation Cycles.

90. The income from the residential leases have ceased as a result of the subsequent citations and demand from the city that ended Erato and Eagle Nation's ability to lease the condominium space in the building.

91. Defendant's actions were done in an attempt to force Eagle Nation Cycles out of business. Eagle Nation Cycles is located on a prime piece of property located in a developmental district of downtown. Finding a large cache of drugs would have resulted in an easy acquisition of property for the city.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, pursuant to Federal Law 42 USC Sec. 1983, the Fourteenth Amendments to the United States Constitution and the Court's own equitable powers, respectfully requests that the Court:

1. Reimburse Plaintiffs for Attorney fees.
2. Award Plaintiffs for all fees and all court related cost for this case.

3. Reimburse the Plaintiffs for any loss of income. $200,000.00

4. Award Plaintiffs punitive damages $50,000,000.00

5. Award Plaintiffs compensatory damages $200,000.00

6. Declaratory Relief affirming that the conduct by the defendants was wrongful, violated the Plaintiffs' rights and caused personal, illegal damage.

7. Such other and further relief as this Court deems just and proper.

I declare under penalty of perjury that the foregoing is true and correct.

Complaint signed this 25 day of November, 2014.

_____
(Signature of Plaintiff)

Cole J. White
Attorney for the Plaintiffs

White Law Offices, LLC.
131 N. Broadway
Green Bay WI, 54303
Ph./Fax. 888-482-5950
cole@whitelawllc.com
www.whitelawllc.com